UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MARIO T. TURNER,

           Plaintiff,

                                          **Hon. Hugh B. Scott**

           v.                                06CV558A

                                                **Report**
                                                **and**
MICHAEL J. ASTRUE Commissioner of      **Recommendation**
Social Security[1],

           Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 8 (defendant), 10 (plaintiff)).

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to Supplemental Security Income benefits.

## PROCEDURAL BACKGROUND

The plaintiff, Mario T. Turner ("Turner" or "plaintiff"), filed an application for Supplemental Security Income benefits on November 15, 2002. That application was denied initially and on reconsideration. Plaintiff appeared before Administrative Law Judge Theodore

---

[1] On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Mr. Astrue is substituted for now former Commissioner Jo Anne B. Barnhart as Defendant in this action; no further action is required, 42 U.S.C. § 405(g).

Burock ("ALJ"), who considered the case <u>de novo</u> and concluded, in a written decision dated October 25, 2005, that plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on August 8, 2006, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on August 21, 2006 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 8, 10). The motions were argued and submitted on May 11, 2007 (Docket No. 13).

## **FACTUAL BACKGROUND**[2]

Plaintiff was born on April 1, 1968, and has a limited ninth grade education (with a reading level at the fourth grade and spelling at the third grade level). Prior to his impairment, he worked as a hotel housekeeper, a bottle and can sorter, book sorter, and laundry worker. After the 2001 accident, plaintiff worked as an automobile mechanic, repairing cars purchased at auction (R. 277-78, 281-82), which the ALJ disregarded as substantial gainful activity (R. 302-03).

## **MEDICAL AND VOCATIONAL EVIDENCE**

Plaintiff claims impairments to his neck and back from a 2001 automobile accident. The ALJ deemed these injuries to be severe, while finding other claimed impairments were not. Plaintiff claims that his neck and back were worsened by a second automobile accident in 2003. Plaintiff also claims to have learning problems (borderline intellectual functioning and antisocial personality disorders) and alcohol and cannabis dependence.

---

[2] References noted as "(R.__)" are to the certified record of the administrative proceedings.

As for plaintiff's neck and back ailments, the ALJ found those to be severe, but noted that the dosage of medication prescribed to plaintiff was too mild for his claimed level of pain (R. 23, 24). The ALJ rejected the findings of Dr. William Capicotto that plaintiff was totally disabled (R. 187) as being inconsistent with the objective medical record and the conservative treatment rendered to plaintiff (R. 25). The ALJ also found not credible plaintiff's testimony that his treatment was ineffective (R. 24). The ALJ found that plaintiff had the residual functional capacity to perform light work (lifting twenty pounds maximum) provided he avoided dangerous equipment (R. 26). As for plaintiff's learning disabilities and substance dependence, the ALJ found that each of these were not sufficiently severe under the Social Security regulations to be disabling (R. 22).

Vocational expert Cecilia Thomas concluded that a person in plaintiff's circumstances could perform the tasks of a dishwasher or janitor. Thomas also found that a hypothetical person in Turner's state could perform sedentary work, such as an assembler or a quality control worker, but that person must be able to perform repetitive tasks and not miss work. (R. 27.) Plaintiff, however, missed two days per month due to migraine headaches (see R. 23, 297-98). The vocational expert opined that employers would not tolerate that degree of absenteeism (R. 27, 311-12). Applying the Medical-Vocational grid for a younger, unskilled person with limited education, the ALJ concluded that plaintiff was not disabled.

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a

3

mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that his impairment prevents him from returning to her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

>  (1) whether the plaintiff is currently working;
>
>  (2) whether the plaintiff suffers from a severe impairment;
>
>  (3) whether the impairment is listed in Appendix 1 of the relevant regulations;
>
>  (4) whether the impairment prevents the plaintiff from continuing his past relevant work; and
>
>  (5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing his past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work he has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the

individual's ability to return to his past relevant work given his residual functional capacity. Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, plaintiff focuses upon the ALJ's findings regarding his physical condition and argues that the ALJ decided this case on an incomplete record. Although Turner claimed coverage from his 2001 accident, the ALJ failed to take into account the exacerbation of plaintiff's injuries following a second July 2003 accident (Docket No. 10, Pl. Memo. of Law at 6). Plaintiff believes that two residual functional capacity analyses should have been found, one before and the second after his 2003 accident (id. at 6-7). Plaintiff next claims that the ALJ substituted his opinion for that of the doctors, in particular in the ALJ's interpretation of plaintiff's MRI reports (id. at 7-8). Plaintiff faults the ALJ for relying upon consultative examiner Dr. Fenwei Meng (id. at 8) from March 2003, four months prior to his second accident (id.) This single consultative examination was not followed up after the second accident to see if plaintiff's condition worsened as a result (see id. at 8-9). Turner believes that the ALJ and the Appeals Council should have contacted (or recontacted) plaintiff's treating physicians to clarify Dr. Michael Meyer's analysis of Turner's MRI results (id. at 9-11) and Dr. Capicotto for finding that plaintiff was totally disabled (id.). Finally, plaintiff objects to the ALJ's finding that Turner was not credible as to the efficacy of his treatment (id. at 12-13).

First, defendant Commissioner contends that, since this is an Supplemental Security Income ("SSI") application, plaintiff's onset date of December 2001 is not material and the relevant period ran from the SSI application date, in November 15, 2002, through the ALJ's decision date of October 28, 2005 (Docket No. 11, Def. Reply Memo. at 2). The Commissioner

argues that there was substantial evidence before the ALJ that Turner could perform light work, the fourth step in the five-step inquiry (Docket No. 9, Def. Memo. at 15-16).  He points to Dr. Rand's August 2003 report that plaintiff's extremities did not have any deformities (id. at 17), as well as the pre-July 2003 medical reports regarding plaintiff's upper extremities' strength and sensation (id. at 16, citing R. 245, 242 (Dr. Bennett), 153 (Dr. Meng)).

Second, the Commissioner argues that Dr. Meyer in 2004 only restricted plaintiff to avoid heavy lifting (R. 218), thus his earlier finding that plaintiff's MRI results were "impressive" should be viewed with the latter limited restrictions (Docket No. 11, Def. Reply Memo. at 3). The restrictions against heavy lifting is consistent with the residual functional capacity for light work (id.).

Plaintiff complains that the ALJ did not factor in his second accident and the Commissioner's argument about the start date for his SSI being the application date rather than the onset date does not address plaintiff's point about the completeness of the record for evaluating his claimed disability within the application period.  The ALJ noted that plaintiff's pain increased following the second accident and that Gerald Werder, D.C., noted that plaintiff was able to work after the 2001 accident but was not after the 2003 accident (R. 20).  The ALJ noted that, while plaintiff testified to constant pain, Turner did not seek treatment prior to the hearing and what treatment he got was conservative and chiropractic (R. 23).  If we accept plaintiff's argument that two residual functional capacity analyses should have been done, the one prior to the July 2003 accident would be the same as the ALJ's findings that he was not disabled, thus reducing the duration of disability coverage.  The ALJ, however, did not expressly consider the impact of the 2003 accident on exacerbating plaintiff's condition, although he noted

7

Case 1:06-cv-00558-RJA-HBS   Document 14   Filed 07/03/07   Page 8 of 9

that plaintiff's care was conservative.  The Commissioner argues that Dr. Meyer's 2004 restriction to avoid heavy lifting and nothing else is consistent with light work and should not require a reassessment in light of plaintiff's second accident (see Docket No. 11, Def. Reply Memo. at 3-4).

This case should be remanded for the ALJ to assess plaintiff's condition arising from the second accident and whether he was disabled from that accident.

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be **REVERSED** and this matter be **REMANDED** for further administrative proceedings. Defendant's motion for judgment on the pleadings (Docket No. 8) should be **denied** and plaintiff's motion for similar relief in his favor (Docket No. 10) should be **granted**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

**Any objections to this Report & Recommendation *must* be filed with the Clerk of this Court *within ten (10) days* after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).  <u>Failure to file objections to this report & recommendation within the specified time or to request an extension of such time waives the right to appeal any subsequent district court's order adopting the recommendations contained herein.</u>**  Thomas

8

v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

/s/ Hugh B. Scott
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
July 3, 2007